UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PETCHEM, INC.,

Plaintiff,

-vs-                                          Case No. 6:04-cv-1080-Orl-28KRS

CANAVERAL PORT AUTHORITY,

Defendant.

_____

## ORDER

Plaintiff Petchem, Inc. ("Petchem") brought the instant action pursuant to 42 U.S.C. § 1983 alleging that Defendant Canaveral Port Authority ("Port Authority") discriminated against interstate commerce in violation of the dormant Commerce Clause by granting Seabulk Towing, Inc. ("Seabulk") an exclusive franchise to provide tug and towing services in Port Canaveral, Florida. This cause is before the Court on the Port Authority's motion to dismiss or alternatively for summary judgment (Doc. 13). For the following reasons, the Port Authority's motion must be granted in part and denied in part.

### I. BACKGROUND

The following facts are assumed to be true for the purpose of ruling on the Port Authority's motion. The Port Authority is a port district and special taxing district of the State of Florida. Compl. ¶ 5. From 1975 to April 18, 2001, the Port Authority granted Seabulk an exclusive franchise to provide tug and towing services in Port Canaveral. Compl. ¶ 22. This exclusive arrangement had the effect of precluding Petchem and Seabulk's other

competitors from competing in the market to provide commercial towing services in Port Canaveral.

The Federal Maritime Commission ("FMC") and Administrative Law Judge Michael A. Rosas have previously determined that the Port Authority's preferential treatment toward Seabulk violated of the Shipping Act of 1984, 46 U.S.C. App. § 1701 et seq. Compl. ¶¶ 11-12. Shortly after Judge Rosas issued his decision, the Port Authority entered into a settlement agreement with the FMC's Bureau of Enforcement which, among other things, provided for "the settlement of all civil penalties and other matters arising from the violations set forth and described in [the FMC's order and Judge Rosas' decision]." Compl. ¶ 14; Settlement Agreement, Doc. 13, Ex. 1, at 2 (hereinafter "Settlement Agreement"). Petchem joined in the settlement agreement as an intervenor.

Petchem subsequently brought the instant action alleging that the Port Authority's exclusive arrangement with Seabulk discriminated against interstate commerce in violation of the dormant Commerce Clause. The Port Authority now seeks dismissal of Petchem's complaint.

## II. MOTION TO DISMISS STANDARD

To warrant dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Blackston v. Alabama, 30 F.3d 117, 120 (11th Cir. 1994) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). In determining whether to grant a motion to dismiss, a court must accept all the factual allegations in the complaint as true and consider all reasonable inferences derived therefrom in the light most favorable to

the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Jackson v. Okaloosa County, Fla.</u>, 21 F.3d 1531, 1534 (11th Cir. 1994); <u>Hunnings v. Texaco, Inc.</u>, 29 F.3d 1480, 1484 (11th Cir. 1994).

## III. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986). However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. "[A]t the summary judgment stage, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 249.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." <u>Gargiulo v. G.M. Sales, Inc.</u>, 131 F.3d 995, 999 (11th Cir. 1997). "The evidence presented cannot consist of conclusory allegations or legal conclusions." <u>Avirgan</u>

v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991); see also Fed. R. Civ. P. 56(e) (providing that the nonmovant's response "must set forth specific facts showing that there is a genuine issue for trial").

## IV. ANALYSIS

Two issues are raised in the Port Authority's motion.  The first issue is whether the settlement agreement between the FMC's Bureau of Enforcement, the Port Authority, and Petchem precludes Petchem's dormant Commerce Clause claim.  The second issue is whether Petchem's punitive damages claim is barred as a matter of law.

### A. The Effect of the Settlement Agreement

"A settlement agreement is a contract and, as such, its construction and enforcement are governed by principles of Florida's general contract law."  Schwartz v. Fla. Bd. of Regents, 807 F.2d 901, 905 (11th Cir. 1987).  A court's task in interpreting a settlement agreement entered into in Florida "is to determine the intention of the parties from the language of the agreement, the apparent objects to be accomplished, other provisions in the agreement that cast light on the question, and the circumstances prevailing at the time of the agreement."  Id.

The Port Authority contends that the language in the settlement agreement providing for "the settlement of . . . *other matters* arising from [the Port Authority's Shipping Act] violations" plainly precludes Petchem's dormant Commerce Clause claim.  Settlement Agreement, at 2 (emphasis added).  Reading the settlement agreement as a whole, however, it is clear that its main, if not its only, purpose was to "avoid the expense, delay, and uncertainty associated with continuing . . . [the] proceedings" before the FMC and Judge

-4-

Rosas. Id. Thus, although the Port Authority's proffered interpretation is not without some plausibility, "other matters" might also be reasonably construed as referring only to matters before the FMC and Judge Rosas.   Given this alternative construction, it is clear that, contrary to the Port Authority's contention, a plain reading of the "other matters" clause does not resolve the question of whether Petchem waived the right to bring a private cause of action against the Port Authority.   Rather, this question will ultimately depend on analysis of "other provisions in the [settlement] agreement" and "the circumstances prevailing at the time of the agreement"–that is, factors which are neither discussed in the Port Authority's motion nor ripe for examination at this stage of the proceedings.

### B. The Viability of Petchem's Punitive Damages Claim

While the Supreme Court in Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981), determined that municipalities are "immune from punitive damages under 42 U.S.C. § 1983," it has not yet determined whether other governmental entities are similarly immune. That said, the reasoning of the Newport decision provides considerable guidance to lower courts in determining whether punitive damages claims against entities such as the Port Authority should be permitted.  Critical to the Court's decision in Newport was its reluctance to place the financial burden of punitive damages claims "on the shoulders of blameless or unknowing taxpayers." Id. at 266-67.  "[P]unitive damages imposed on a municipality," the Court noted, "are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill." Id. at 267.   Under this reasoning, governmental entities–municipalities or otherwise–should be immune from punitive damages claims so long as the cost of such claims would likely be passed onto taxpayers.

While Petchem appears to agree that the logic of <u>Newport</u> extends beyond municipalities, it argues that the Port Authority, as a "self-sustaining" entity, should not be granted immunity from punitive damages because it has the "ability to pay a judgment from its own revenue and not taxpayer revenue." Doc. 17 at 15. Petchem's reading of <u>Newport</u> is too simplistic. Even if the Port Authority were able to pay a punitive damages judgment out of its "own revenue," the cost of the judgment would still likely be passed onto taxpayers in the form "of increased tolls [or] fares," diminished services, and "other expenses borne by the public generally." <u>Evans v. Port Auth. of N.Y. & N.J.</u>, 273 F.3d 346, 357 (3d Cir. 2001) (finding that immunity to punitive damages extended to the Port Authority of New York and New Jersey) (quoting <u>Shifa Servs., Inc. v. Port Auth. of N.Y. & N.J.</u>, No. 96-1361, 1997 U.S. Dist. LEXIS 13611, at *15 (S.D.N.Y. Sept. 5, 1997) (finding the same despite the plaintiff's argument that the Port Authority received "no tax revenues" and was "financially independent of New York and New Jersey")). Based on this reasoning, the Court joins at least one other court in this district in extending the scope of immunity from punitive damages claims to non- or quasi-municipal entities like the Port Authority. <u>See, e.g.</u>, <u>Kubany v. Sch. Bd. of Pinellas County</u>, 839 F.Supp. 1544, 1551 (M.D. Fla. 1993) ("[P]unitive damages are not available under § 1983 from a governmental entity."); <u>see also</u> <u>Garrett v. Clarke County Bd. of Educ.</u>, 857 F. Supp. 949, 953 (S.D. Ala. 1994) (same) (quoting

Kubany).[1]  In accordance with this determination, the Port Authority's motion to dismiss

Petchem's punitive damages claim is **GRANTED**.

## V. CONCLUSION

In accordance with the foregoing, it is **ORDERED** that the Port Authority's motion to

dismiss or alternatively for summary judgment (Doc. 13) is **GRANTED** in part and **DENIED**

in part.   The Port Authority's motion is **GRANTED** as to Petchem's claim of punitive

damages but is otherwise **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this ___/3___ day of May,

2005.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party

---

[1] Petchem's reliance on Barnett v. Housing Authority of Atlanta, 707 F.2d 1571 (11th Cir. 1983), and Vierling v. Celebrity Cruises, Inc., 339 F.3d 1309 (11th Cir. 2003), is misplaced.  First, in Barnett, the Eleventh Circuit declined to even consider defendant's immunity argument because it had failed to raise, and thus waived, that argument in the lower court. Thus, the court's comments in regard to defendant's argument were, of course, dicta. Additionally, the court did not have the benefit of more than twenty years of caselaw interpreting Newport, including those cases which the Court has relied on herein.  With regard to Vierling, a case in which the Eleventh Circuit held that the Port Authority of Broward County was not an arm of the state, the Court agrees with the Third Circuit's assessment in Evans that "the question of a public authority's immunity from suit in federal court under the Eleventh Amendment . . . presents different considerations from the question of a public authority's immunity from punitive damages under Section 1983" and, as such, that "Newport supplies the appropriate framework for analysis" of the latter issue. 273 F.3d at 357 n.7.